UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD L. DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 13-cv-7647 |
| ) | |
| VINCENZO DISALVO, ) | Judge John W. Darrah |
| MATTHEW MCKEE, JOEL MANTIA, ) | |
| and WILL COUNTY SHERIFF'S OFFICE, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Richard L. Dean filed a Complaint against Defendants Vincenzo DiSalvo, Matthew McKee, Joel Mantia, and Will County Sheriff's Office (collectively, "Defendants"), alleging three causes of action pursuant to 42 U.S.C. § 1983 against DiSalvo, McKee, and Mantia: (I) unlawful search, (II) unlawful seizure, and (III) conspiracy to interfere with equal protection of the laws; (IV) one count of intentional infliction of emotional distress against DiSalvo, McKee, and Mantia; and (V) one count of failure to properly train, supervise, control and discipline against Will County Sheriff's Office. Defendants move to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, to stay the proceedings. For the reasons provided below, this Motion is granted in part and denied in part.

### **BACKGROUND**

On October 25, 2011, Dean was pulled over by an unmarked squad car while pulling out of a parking lot in Joliet, Illinois. (Compl. ¶¶ 10, 15-17.) Two Will County Sheriff's Deputies, DiSalvo and McKee, exited the squad car and approached Dean's vehicle. (*Id.* ¶ 18.) Deputy DiSalvo asked Dean if Dean knew why he had been pulled over; Dean replied he did not know. (*Id.* ¶ 20.) Deputy DiSalvo stated to Dean that Dean had turned out of the parking lot into

the wrong lane; and Deputy McKee asked Dean for his driver's license and proof of insurance, which Dean provided. (*Id.* ¶ 21-22.) After questioning Dean for several minutes, Deputies DiSalvo and McKee took Dean's license and proof of insurance and walked back to their vehicle. (*Id.* ¶¶ 23-24.)

As Dean waited in his car, he heard Deputy DiSalvo loudly commanding him to turn off and exit his car. (*Id.* ¶ 25.) Dean complied and began to walk toward Deputy McKee, who was standing near the unmarked car. (*Id.* ¶ 26.) Before Dean had reached Deputy McKee, he noticed Deputy DiSalvo was engaged in a search of Dean's car without Dean's permission. (*Id.*) Deputy McKee then began to search Dean's person and found only cash, a debit card, and a cell phone. (*Id.* ¶ 27.) Deputy McKee handcuffed Dean without explanation. (*Id.*) As Dean stood handcuffed on the shoulder of the road, Dean alleges Deputy McKee pulled Dean's pants around his ankles and began to search Dean below his waist. (*Id.* 28.) Deputy McKee allegedly then held in the air the cash he had recovered from his search of Dean and stated, "This is mine now!" (*Id.* ¶ 29.)

Deputy DiSalvo recovered nothing from Dean's vehicle, stopped searching, and approached Dean and Deputy McKee, stating, "Where was it at that I smell it[? J]ust tell me where it is[.]" (*Id.* ¶ 30.) Dean responded that he did not know what Deputy DiSalvo was talking about. (*Id.* ¶ 31.)

Deputy McKee then began to search Dean's vehicle, including the trunk and gas tank, for several minutes. (*Id.* ¶ 33.) Again recovering nothing, Deputy McKee returned to

Deputy DiSalvo and Dean.  (*Id*.)  Deputy DiSalvo then told Dean that he didn't "care about a little cannabis," but if Dean did not tell him where it was, the deputies would "lock [Dean] up." (*Id*. ¶ 34.)  Deputy DiSalvo then returned to Dean's car to search it a second time.  (*Id*. ¶ 37.)

Deputy DiSalvo's second search revealed two small plastic baggies of cannabis, which he carried back to Dean.  (*Id*. ¶¶ 37-38.)  Although Dean professed not to know anything about the cannabis, Deputy DiSalvo allegedly began to ask Dean a series of questions, including whether Dean wanted to go home or "work this off," and "Where are the guns?"  (*Id*. ¶¶ 39, 41.) Deputy DiSalvo then told Dean that he would be charged with "intent to deliver" to Dean's co-workers.

After having been stopped for nearly 45 minutes, Deputy Joel Mantia arrived in a marked squad car.  (*Id*. ¶ 48.)  Dean was transported to the Will County Adult Detention Facility, where he was booked and charged with possession of over ten grams, but not more than thirty grams, of cannabis with the intent to deliver.  (*Id*. ¶ 49.)  Dean was not issued a traffic citation.  (*Id.* ¶ 50.) Prior to posting bond, Dean spent one day in the Will County Adult Detention facility, which caused him to be absent from his job without excuse and resulted in his termination from that job.  (*Id*. ¶¶ 59-60.)  Dean's vehicle was impounded at the time of his arrest.  (*Id*. ¶ 63.)

On January 13, 2012, Dean pled guilty to one count of Unlawful Possession of Cannabis with Intent to Deliver, a Class A Misdemeanor, in Will County Circuit Court Case Number

11 CF 2101.[1] (Defs.' Mot. to Dismiss, Ex. A.) Dean moved to withdraw his guilty plea and was denied on January 9, 2013. (*Id*. Ex. C, p. 9.) Dean timely appealed, and that appeal was still pending on July 8, 2013. (*Id*. Ex. C, p. 11.)

## LEGAL STANDARD

When considering motions brought pursuant to Rule 12(b)(6), all well-pleaded allegations within the complaint are read in the light most favorable to the plaintiff and presumed true. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). This presumption is not extended to "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). A proper claim requires only short and plain statements of jurisdiction and entitlement to relief, as well as a demand for the relief sought. Fed. R. Civ. P. 8(a). However, the pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A defendant may move to dismiss, pursuant to Rule 12(b)(6), if the plaintiff has failed to state a claim upon which relief can be granted. Withstanding such a motion requires alleging enough facts to support a claim that is "plausible on its face." *Chasensky v. Walker*, 740 F.3d 1088, 1095 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. If the court must speculate, plausibility is lacking. *Id*.

---

[1] Judicial notice may be taken of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (citations omitted).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Tex. Indep. Producers and Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In service of these goals the district court has "broad discretion." *Clinton v. Jones*, 520 U.S. 681, 707 (1997). Yet, there are three common factors that should be considered: (1) undue prejudice or tactical disadvantage to the non-moving party, (2) simplification of the issues in question, and (3) reduction of the burden of litigation on the parties and court. *See RR Donnelley & Sons v. Xerox Corp.*, Case No. 12-cv-6198, 2013 WL 6645472 at *2 (N.D. Ill. Dec. 16, 2013).

## ANALYSIS

To be facially plausible, each of Dean's Section 1983 claims against the individual Sheriff's Deputies DiSalvo, McKee, and Mantia (Counts I, II, and III) must show that the actions the deputies took were unlawful. Additionally, Dean's Complaint must be construed liberally because he is proceeding *pro se*. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citation omitted). However, Dean pled guilty to possession of the cannabis Deputy DiSalvo purportedly discovered in Dean's car. Therefore, "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction" and cannot stand "unless the conviction has already been invalidated." *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

The potential impact of the *Heck* doctrine on Dean's claims weighs heavily in favor of awaiting the outcome of Dean's appeal. Dean suffers no tactical disadvantage if a stay is granted. In fact, in at least one way, Dean's tactical position can only improve. Should Dean's

appeal result in a reversal of his conviction, *Heck* would no longer bar his claims. Conversely, if the case here proceeded without a stay, Dean's conviction must be considered valid. The Complaint will be finally resolved, rather than subject to pending litigation in state court.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively to Stay Proceedings [13] is granted in part and denied in part. Defendants' Motion to Dismiss is denied with leave to refile. The case will be stayed pending the resolution of Dean's appeal in Will County Circuit Court Case Number 2011 CF 2101.

Date:    April 2, 2014

JOHN W. DARRAH
United States District Court Judge